Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| POPULAR MEZZANINE FUND, LLC<br><br>Recurrido<br><br>V.<br><br>GIAN C. PIOVANETTI Y OTROS<br><br>Peticionario | TA2026CE00595 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2025CV11121<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda del Toro y la Jueza Lotti Rodríguez.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 17 de junio de 2026.

El peticionario, señor Gian C. Piovanetti nos solicita que revisemos la denegatoria del Tribunal de Primera Instancia para paralizar los procedimientos y ordenar la confidencialidad del expediente de la reclamación en su contra.

La recurrida Popular Mezzanine Fund, LLC, en adelante PMF o recurrida, presentó su oposición al recurso. Los hechos procesales pertinentes a este recurso se detallan a continuación.

I

PMF presentó una demanda contra el peticionario en la que incluye las siguientes causas de acción, violaciones a la Ley Contra el Crimen Organizado y Lavado de Dinero, Daños y Perjuicios, Enriquecimiento Injusto, Sentencia de Invalidez y Acto Inválido, Pago o Cobro de lo Indebido y Dolo Grave, Solicitud de Daños Punitivos y honorarios de abogado. La recurrida alegó que el peticionario la despojó de sus fondos, mediante un patrón de apropiación ilegal, transacciones bancarias fraudulentas y lavado de dinero. Su representación legal adujo, que el peticionario y demás demandados se apropiaron ilegalmente de quince (15) millones de la

recurrida. Según la recurrida, el peticionario se apropió directamente de al menos $3,682,060.00, junto a los demás demandados.[1]

El peticionario solicitó **la paralización de los procedimientos**, basado en la doctrina de litigación paralela reconocida en *ELA v. Casta,* 162 DPR 1 (2004), y en su derecho a no autoincriminarse. Su representación legal informó que recibió un Target Letter del FBI, mediante el que fue notificado de una investigación criminal federal en su contra, relacionada a los hechos de la demanda. El peticionario argumentó que su alegación responsiva y el descubrimiento de prueba podían afectar su derecho a la no autoincriminación.[2]

La recurrida se opuso a la paralización de los procedimientos, porque el peticionario no evidenció el alegado Target ni la existencia de una investigación criminal. No obstante, alegó que la paralización era una medida desproporcional y excesivamente amplia, aunque así fuera. Por último, adujo que el derecho a no autoincriminarse no era un escudo absoluto para suspender los procedimientos.[3]

El peticionario también solicitó que el caso se designara confidencial y se restringiera el acceso a su expediente. Invocó su derecho a no autoincriminarse, debido a que las alegaciones de la demanda podían configurar delitos. Su representación legal adujo que el mantener el expediente en SUMAC, afectaba sus derechos constitucionales. Además, de arriesgarlo a la exposición penal, debido a que el expediente podía ser inspeccionado, reproducido, distribuido o utilizado en su perjuicio. Por eso, solicitó que el acceso estuviera restringido únicamente a los abogados de las partes.[4]

---

[1] Entrada núm. 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC) del Tribunal de Primera Instancia (TPI).
[2] Entrada núm.53, SUMAC del TPI.
[3] Entrada núm. 76, SUMAC del TPI.
[4] Entrada núm. 61, SUMAC del TPI.

Aunque la recurrida reconoció la importancia de que los procedimientos judiciales sean públicos, se allanó a lo que decidiera el tribunal.[5]

El TPI resolvió que no procedía la paralización total e indefinidamente del pleito. Según el TPI, en *ELA v Casta Developers,* supra, no se reconoció el derecho a paralizar un pleito civil, debido a la existencia de un proceso criminal. El TPI determinó que ese era un asunto, que debía evaluarse de acuerdo a las circunstancias particulares de cada caso. No obstante, resolvió que en este caso no se justificaba la paralización porque: (1) la acción la instó una parte privada y no el Estado, (2) el caso comprendía múltiples reclamaciones y demandados, (3) la paralización dilataría indefinidamente el trámite del caso y (4) perjudicaría el derecho de la demandante a la adjudicación oportuna de sus reclamos. Sin embargo, hizo claro que el peticionario tenía las puertas abiertas para invocar el privilegio a no autoincriminarse de forma específica y fundamentada. Igualmente, dejó las puertas abiertas para que cualquier planteamiento sobre los privilegios invocados por los demandados, pudiera levantarse oportunamente, de forma específica y basado en incidencias concretas. No obstante, resolvió que ninguno de los fundamentos esbozados, en ese momento, justificaba detener en su totalidad el trámite del caso y relevarlos de cumplir sus obligaciones procesales.[6]

El foro recurrido tampoco concedió la solicitud para declarar el proceso confidencial. El tribunal partió de la norma general de que los procedimientos y expedientes judiciales son públicos. Sin embargo, reconoció la discreción de los tribunales para disponer la confidencialidad de un procedimiento o de parte del expediente, siempre que las circunstancias particulares lo justifiquen. Según el

---

[5] Entrada núm. 74, SUMAC del TPI.
[6] Entradas núm. 78 y 79, SUMAC del TPI.

TPI, toda limitación al acceso público requiere una demostración concreta y suficiente que justifique apartarse de la norma general.[7]

El TPI concluyó que los fundamentos esbozados por la peticionaria sobre: (1) una alegada investigación federal en curso, (2) la cobertura mediática del caso, (3) el posible menoscabo a su reputación y (4) una posible lesión a sus derechos constitucionales, no justificaban convertir el procedimiento en confidencial. El foro primario llegó a esa conclusión, porque el peticionario no especificó el documento, anejo, información particular o incidencia concreta del trámite judicial cuya divulgación ameritaba sellar la totalidad del expediente. Según el TPI, la atención mediática y que alguna de las partes invoque la posibilidad de una investigación o proceso penal futuro, no convierten automáticamente el pleito civil en confidencial. Además, advirtió que los planteamientos generales sobre honra, reputación o intimidación, sin una demostración particularizada del daño claro y específico que se pretendía evitar, no derrotaban la presunción de publicidad de los expedientes judiciales. Sin embargo, aclaró que, cualquiera de las partes podía solicitar el remedio correspondiente, si surgía la necesidad de proteger información específica, documentos particulares o incidencias concretas del procedimiento. No obstante, advirtió que la solicitud tenía que estar debidamente fundamentada para poder evaluarla en sus méritos. Fue enfático en que toda solicitud futura de confidencialidad debía identificar específicamente el material o trámite que se interesaba proteger. Por último, advirtió que la solicitud debía exponer con particularidad una causa justificada y porque no existía una alternativa menos onerosa.

En síntesis, el TPI se negó a ordenar la confidencialidad del expediente porque: (1) la norma general es el carácter público de los

---

[7] Entrada núm. 75, SUMAC del TPI.

procedimientos judiciales y de los expedientes. (2) el peticionario no identificó los expedientes ni la información que ameritaban sellar el expediente (3) el peticionario no demostró porque era necesario y adecuado en esta etapa restringir el acceso exclusivamente únicamente a los abogados de récord. (4) la atención mediática, ni la posibilidad de una acción penal futura no convertían automáticamente el pleito en confidencial.

Inconforme, el peticionario presentó este recurso en el que alega que:

ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA SOLICITUD DE PARALIZACIÓN DE LOS PROCEDIMIENTOS CIVILES, A PESAR DE QUE LA DEMANDA IMPUTA AL PETICIONARIO CONDUCTA FRAUDULENTA, APROPIACIÓN ILEGAL, LAVADO DE DINERO Y CRIMEN ORGANIZADO, Y A PESAR DE QUE EL PETICIONARIO ALEGÓ HABER RECIBIDO UN TARGET LETTER DEL FBI RELACIONADO CON LOS MISMOS HECHOS, COLOCÁNDOLO ANTE EL DILEMA CONSTITUCIONAL DE DEFENDERSE EN EL PLEITO CIVIL O PRESERVAR SU DERECHO A NO AUTOINCRIMINARSE.

ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA SOLICITUD DE DESIGNAR EL CASO COMO CONFIDENCIAL O, EN LA ALTERNATIVA, RESTRINGIR EL ACCESO A LOS ESCRITOS Y DOCUMENTOS RELACIONADOS CON LA INVESTIGACIÓN CRIMINAL FEDERAL Y LA INVOCACIÓN DEL PRIVILEGIO CONTRA LA AUTOINCRIMINACIÓN, PERMITIENDO ASI LA DIVULGACIÓN PÚBLICA DE INFORMACIÓN SENSIBLE CON POTENCIAL IMPACTO PENAL, PROCESAL Y CONSTITUCIONAL SOBRE EL PETICIONARIO.

## II

El Tribunal Supremo de Puerto Rico estableció los criterios para la expedición de un certiorari en *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Nuestro máximo intérprete de la ley local, definió el certiorari como un mecanismo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. La opinión ratifica lo previamente expresado en *Caribbean Orthopedics v. Medshape et*

*al.,* 207 DPR 994, 1004 (2021); *McNeil Healthcare v. Mun. Las Piedras I,* 206 DPR 391, 403 (2021)*, 800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020). La característica principal del *certiorari,* es la discreción que tiene el tribunal para atenderlo. La discreción ha sido definida reiteradamente como una forma de razonabilidad aplicada al discernimiento judicial. Su ejercicio persigue el objetivo de llegar a una conclusión justiciera. *Rivera et al. v. Arcos Dorados et al.* supra pág. 210.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V. establece los preceptos que rigen la discreción del Tribunal de Apelaciones para expedir un recurso de *certiorari.* Según lo establecido en la Regla 52.1*, supra,* el recurso de *certiorari* solamente se expedirá para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. El Tribunal de Apelaciones lo expedirá únicamente, cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción, podrá revisar órdenes o resoluciones interlocutorias del Tribunal de Primera Instancia sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Superados los criterios de la Regla 52.1*, supra,* a fin de que el Tribunal de Apelaciones pueda ejercer su discreción prudentemente, la Regla 40 de su Reglamento, 4 LPRA LPRA Ap. XXII establece los criterios que debería considerar para determinar si procede la expedición de un auto de *certiorari.* El texto de la regla citada es el siguiente.

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B) Si la situación de los hechos planteada es la más indicada para analizar el problema.

C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

### III

Primeramente, colegimos que no se cumplen con los criterios de la Regla 52.1 de Procedimiento Civil. Tomando en consideración las circunstancias particulares de este caso no estamos ante un fracaso de la justicia que amerite ejerzamos nuestra discreción, para intervenir con la decisión del foro primario en esta etapa procesal. La denegatoria de expedir el referido auto no constituye una adjudicación en los méritos, simplemente es índice de la facultad discrecional de este Tribunal para negarse a revisar, **en determinado momento,** una decisión emitida por un tribunal de instancia. *Sociedad Legal de Gananciales v. Pauneto Rivera,* 130 DPR 749, 755-756 (1992) Énfasis nuestro.

### IV

Por lo que se deniega el recurso de *certiorari.*

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones